IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRADLEY A. McKEOWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:18-cv-00306 |
| ) | |
| KHALIL RAHIM, *et al.*, ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bradley McKeown, as administrator and personal representative of the estate of Katherine McKeown, filed this action against defendants Khalil Rahim, Troy Livingston, V. Jones Trucking, LLC (VJT), and James Hardie Building Products, Inc. (Hardie), seeking damages for a vehicle collision in which a tractor-trailer driven by Rahim and owned by Livingston struck the McKeowns' vehicle, killing Bradley's wife Katherine McKeown. On March 16, 2020, the court entered an opinion and order dismissing several of McKeown's claims and granting in part McKeown's motion to file a third amended complaint. McKeown filed his third amended complaint, including in count three a claim against VJT for vicarious liability based on an alleged joint venture between VJT and Livingston. (Third Am. Compl., Dkt. No. 70.) This matter is before the court on VJT's motion to dismiss with prejudice count three of McKeown's third amended complaint.[1] (Dkt. No. 71.) For the reasons set forth below, the court will grant in part and deny in part VJT's motion.

---

[1] In response to McKeown's motion to file a third amended complaint, VJT argued that McKeown's joint-venture theory was futile because McKeown did not allege that VJT had a duty to McKeown. In a prior opinion, the court rejected this argument but noted that it was unclear whether McKeown's proposed third amended complaint stated a claim for vicarious liability based on a joint venture. (Dkt. No. 67.) Specifically, it questioned whether McKeown alleged an equal right to manage, direct, or control the alleged venture as required under Virginia law.

I.  BACKGROUND

In August 2017, Bradley and Katherine McKeown were traveling on I-81 in Virginia when a tractor-trailer, driven by Rahim and owned by Livingston, rear ended their vehicle.  The collision caused the McKeowns' vehicle to spin sideways and crash into another vehicle.  Katherine McKeown died at the scene of the accident.  (Third Am. Compl. ¶¶ 1–2, 15, 23–24, 34–38.)

McKeown alleges that Rahim, employed by Livingston and VJT, acted negligently by failing to maintain control of his tractor-trailer, driving too fast, and otherwise operating his vehicle in an unsafe manner.  According to McKeown, 60% of the tractor-trailer's brakes and six of ten brake chambers on the truck and trailer were not in working order, which contributed to the crash.  At the time of the accident, Rahim was transporting a load for Hardie.  (*Id.* ¶¶ 24–25, 39–43.)

As relevant here, McKeown alleges that VJT, a trucking company engaged in freight shipping and hauling, was engaged in a joint venture with Livingston.  He notes that Livingston and VJT had a "lease or other arrangement" under which Livingston would use VJT's name, insurance, USDOT number, and federal operating authority to transport loads.  Subpoenaed bank records show numerous payments from VJT to Livingston, some of which were labeled "for payroll," or contained notations indicating the payment was for a certain number of loads.  VJT would also allegedly retain a portion of the fee paid for transportation of the loads.  VJT's USDOT number and name were listed on the side of the truck Rahim was driving at the time of the accident, and McKeown alleges that within twenty or thirty minutes of the accident, Livingston called the owner of VJT to inform him of the accident.  (*Id.* ¶¶ 16, 28, 50, 77–85.)

---

Because the parties did not brief those issues before McKeown filed his third amended complaint, the court did not address them in its previous opinion.  VJT later filed its motion to dismiss under Rule 12(b)(6) arguing that McKeown failed to state a claim which motion is now before the court.

In support of his other claims, McKeown states that VJT and Livingston completed a vendor form for Hardie that listed VJT as the vendor and Livingston as the contact for the vendor. The e-mail address provided on the form was the same e-mail address used by Rahim and Livingston for Livingston's company. Livingston also allegedly communicated with Hardie about what loads to transport and coordinated payment for transportation of those loads. (¶¶ 106–115).

## II. DISCUSSION

### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwanted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

3

**B. Joint Venture**

In its motion to dismiss, VJT argues that McKeown has not alleged the "mutual control" required to state a claim under a joint-venture theory of liability. "A joint venture is established by contract, express or implied, where two or more persons jointly undertake a specific business enterprise for profit, with each to share in the profits or losses and each to have a voice in the control and management." *Ortiz v. Barrett*, 278 S.E.2d 833, 840 (Va. 1981); *see also Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 539 (4th Cir. 1988); *PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438, 441 (Va. 2003); *Roark v. Hicks*, 362 S.E.2d 711, 714 (Va. 1987). Thus, a joint venture "is usually found to exist where there is (1) mutual benefit, (2) 'an express or implied understanding or agreement that they are to share in the profits or losses' and (3) each party shares in the management of the venture." *Costello v. Frederick Cty. Sanitation Auth.*, 50 Va. Cir. 373, at *4 (Va. Cir. Ct. 2000) (quoting *Wells v. Whitaker*, 151 S.E.2d 422, 430 (Va. 1966)). "It is essential to a joint venture that the participants agree, expressly or impliedly, 'that they are to share in the profits or losses of the enterprise, and that each is to have a voice in its control and management.'" *Andrews v. Primus Telecomms. Grp., Inc.*, 107 F. App'x 301, 308 (4th Cir. 2004) (quoting *PGI, Inc.*, 576 S.E.2d at 441).

"Whether or not a given set of circumstances constitutes a joint adventure is generally a question for the jury." *Flip Mortg. Corp.*, 841 F.2d at 539 (quoting *Smith v. Grenadier*, 127 S.E.2d 107, 110 (Va. 1962)). "However, where it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' the court should dismiss a claim." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)); *see also Alban Tractor Co. v. Sheffield*, 263 S.E.2d 67, 68 (Va. 1980) ("When the question of whether two or more parties were engaged in a joint enterprise becomes pertinent, such question must be

determined as any other factual issue; that is, if the evidence is in conflict, or if reasonable men may differ as to the proper inferences to be drawn from the uncontradicted testimony, a jury question is presented; otherwise, it is a question of law to be determined by the court.").

McKeown takes issue with VJT's use of the phrase "mutual control," arguing that this phrase indicates the degree of control required for "ordinary employment or principal-agent case[s]." (Pl.'s Resp. 6 n.2.) But in so arguing, he relies upon many of the same cases as VJT, which include in their definition of a joint venture "an equal right to direct and govern the movements and conduct of each other in respect" to the joint venture. *Alban Tractor Co.*, 263 S.E.2d at 68; *see also PGI, Inc.*, 576 S.E.2d at 441 ("[E]ach is to have a voice in its control and management."); *Miles v. Rose*, 175 S.E. 230, 236 (Va. 1934) ("Parties cannot be said to be engaged in a joint enterprise . . . unless there be . . . an equal right to direct and govern the movements and conduct of each other in respect thereto."). Despite their arguments, it appears the parties largely agree as to the proper definition of a joint venture.[2]

The question is whether McKeown has alleged sufficient facts—not merely legal conclusions—to support his claim. In his response, McKeown first highlights a string of conclusory allegations found in his third amended complaint: "Livingston and [VJT] were engaged in a joint venture/enterprise at the time of the Crash, and the load at issue in the Crash was being hauled pursuant to, and within the scope of, that joint venture/enterprise"; "[VJT] and Livingston entered into this joint venture/business enterprise for their mutual benefit and with the understanding that they would share in the profits and losses of that venture/enterprise"; "[VJT] and Livingston did in fact mutually benefit and share in the profits and losses of this joint venture/enterprise and each also had a right to control or manage the joint venture/enterprise";

---

[2] McKeown makes a comparison between joint ventures and partnerships in an apparent attempt to support a lesser degree of control—or a right to manage, direct, and govern—necessary to establish a joint venture. In either case, his allegations fail to state a claim.

and, "[VJT] is vicariously liable for the negligence of Livingston and Rahim committed pursuant to, and within the scope of, the joint venture/enterprise, including that which proximately caused the injuries and death of McKeown." (*Id.* ¶¶ 90–93.) However, a plaintiff may not satisfy his pleading burden under Rule 8 simply by reciting the elements of his claim as McKeown does in these allegations. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

McKeown also alleges payments from Hardie to VJT, and subsequent payments from VJT to Livingston for "payroll" or "for loads." McKeown asserts that these facts demonstrate a "substantial business arrangement in the several years leading up to the accident." (Pl.'s Resp. 9.) Although he is correct that these facts indicate cooperation between Livingston and VJT and a likely business relationship, these facts still do not indicate that the relationship was a joint venture. Simply put, they do not establish the requisite "equal right to direct and govern" the venture's operations.

As noted above, McKeown also includes relevant facts in different sections of his complaint. Although he does not cite to these allegations in his response, the court will nonetheless consider them here. Specifically, McKeown alleges that VJT completed a vendor form when it sought to transport loads for Hardie. That form listed VJT as the vendor that would transport the loads but provided contact information for Livingston. McKeown further states that Livingston would communicate with Hardie to book hauling jobs and coordinate payment for those loads. Hardie would send checks to either VJT or Livingston directly, and VJT would often keep a portion of these payments.

By McKeown's own allegations, however, it seems VJT did not always receive payment for loads Livingston transported for Hardie using VJT's operating authority. Notably, McKeown

6

alleges that "because [Livingston] had trouble getting payments from [VJT], Livingston went to James Hardie and requested that it send the checks made payable to [VJT] directly to Livingston's home address." Livingston would endorse those checks in his name and in VJT's name before depositing them in his own personal bank account. (*See* Third Am. Compl. ¶¶ 106–15.) Even taking these facts into account, the complaint still does not indicate an equal right to manage the alleged joint venture.

The court finds *Ortiz* to be analogous here. 278 S.E.2d 833. In *Ortiz*, the plaintiff filed a malpractice suit against the attorneys he hired for a personal injury case. The plaintiff had hired an attorney from the District of Columbia, who then associated with local counsel in Virginia so that he could practice in Virginia courts. The local attorney did some work and communicated with lead counsel, including expressing concerns over some of the filings or giving suggestions before pleadings were filed. But lead counsel retained complete control of the case. The court found that because control was vested in the attorney from the District of Columbia, and local counsel was merely employed to perform limited services, there was no joint venture between the two. *Id.* at 835–36, 840.

Similarly, here, Livingston wanted to perform a service that he was not licensed to perform, so he associated with VJT to obtain operating authority. Based on the allegations, VJT does not appear to have had much input in Livingston's operation other than collecting its fee and having its name on a vendor form submitted to Hardie. Accordingly, it is unclear whether VJT had any right to control or manage Livingston or whether it took a largely hands-off approach to the arrangement. And the only allegations that clearly suggest any management by VJT are McKeown's conclusory statements that the parties each "had a right to control or manage the joint venture/enterprise."

7

The complaint certainly suggests that some business arrangement existed between Livingston and VJT. But, while a joint venture is possible based on the facts before the court, McKeown has pled facts "merely consistent with" a joint venture and has "stop[ed] short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678. Accordingly, McKeown's joint-venture claim against VJT will be dismissed without prejudice.

## C. Statute of Limitations

As an alternative theory in support of its motion to dismiss with prejudice, VJT also asserts that McKeown's joint-venture claim is barred by the statute of limitations because McKeown did not attempt to include this claim as part of his wrongful death action until more than two years after the accident. *See* Va. Code Ann. § 8.01-244(B). "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." *Wyatt v. Owens*, No. 7:14-CV-00492, 2016 WL 6651410, at *2 (W.D. Va. Nov. 10, 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Since McKeown filed his original complaint, he has maintained that VJT and Livingston were engaged in some sort of arrangement—whether that arrangement involved a lease, employment, or independent contractor relationship, or as alleged here, a joint-venture relationship. At each stage, McKeown has relied on the same factual allegations regarding the accident and the same conduct, transaction, and series of events in his attempts to hold VJT liable for Livingston and/or Rahim's negligence. Thus, the court finds that McKeown's joint-

8

venture claim relates back to the date of his original complaint and will therefore deny that portion of VJT's motion.

## III. CONCLUSION

For the reasons stated above, it is hereby ORDERED that VJT's motion to dismiss (Dkt. No. 71) is GRANTED IN PART AND DENIED IN PART, and count three of McKeown's Third Amended Complaint is DISMISSED WITHOUT PREJUDICE. The clerk is directed to send a copy of this order to all counsel of record.

Entered: August 10, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge